United States District Court
District of Massachusetts

```
_____
                                   )
CHESTER J. CHALUPOWSKI, JR. and    )
MALGORZATA B. CHALUPOWSKI,         )
                                   )
          Plaintiffs,              )   Civil Action No.
                                   )   05-10023-NMG
     v.                            )
                                   )
JOHN C. STEVENS, III,              )
Individually and in His Official   )
Capacity as the Chief Justice of   )
the Probate and Family Court of    )
Essex County,                      )
                                   )
          Defendant.               )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

In the instant dispute, Chester J. Chalupowski ("Chester") and Malgorzata B. Chalupowski ("Malgorzata") seek declaratory and injunctive relief to nullify several orders entered by Justices of the Massachusetts Probate and Family Court for Essex County in connection with multiple cases heard by that Court. Defendant now moves to dismiss.

I. **Factual Background**

It is alleged that, in the mid-1990s, Chester and several members of his immediate family became embroiled in a dispute over the control of certain assets held in trust. The dispute

-1-

led to the filing of a number of lawsuits in various Massachusetts courts. Chester's sister, Donna Chalupowski ("Donna"), filed four lawsuits against Chester and other family members in the Probate and Family Court for Essex County which were presided over by defendant, Chief Justice John C. Stevens, III ("C.J. Stevens").

On December 14, 2001, C.J. Stevens allegedly entered an order dismissing three of the cases and Donna filed notices of appeal. From that time forward until November, 2003, the defendant allegedly continued to enter orders and make rulings in all four cases, notwithstanding the fact that three of them had been dismissed. In so doing, the defendant allegedly cause great distress, confusion and hardship to the plaintiffs.

In November, 2003, C.J. Stevens recused himself from the cases (the reasons for which remain unclear) and another Justice was assigned to them. Thereafter, an *ex parte* attachment of plaintiffs' personal property to the amount of $400,000 was allegedly entered in the dismissed cases. Plaintiffs claim that, after the entry of the attachment, "court officers seized, liquidated, and distributed among themselves over $400,000.00 of personal assets belonging to [plaintiffs]". It is unclear who allegedly holds those assets at present.

On January 5, 2005, plaintiffs filed the instant action, seeking to have this Court:

-2-

> [i]ssue declaratory relief declaring void all orders and
> judgments issued by the Defendant or subordinate justices of
> the Essex Probate and Family Court outside of the
> jurisdiction of said Court.

On February 22, 2005, defendant moved to dismiss on the grounds that: 1) under the Rooker-Feldman doctrine, this Court lacks subject matter jurisdiction over the case and 2) plaintiff's claims are barred by the doctrine of judicial immunity.

## II. Legal Analysis

Defendant argues that this Court lacks subject matter jurisdiction over the pending action under the Rooker-Feldman doctrine. See Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6 (1st Cir. 2004). That doctrine stands for the proposition that "the district courts lack jurisdiction over any action that is effectively or substantially an appeal from a state court's judgment". Id. The purpose of the doctrine is to prevent federal district courts from assuming the "unseemly position of reviewing a state court decision for error". Mills v. Harmon Law Offices, P.C., 344 F.3d 42, 44 (1st Cir. 2003).

The doctrine applies squarely to this case because, although the plaintiffs' claim is couched as a federal claim for a declaratory judgment, it is, in effect, an effort to resurrect the issues litigated in the Probate Court. Plaintiffs' success in this suit is contingent entirely upon a ruling by this Court of invalidity of the decisions made by the Probate Court. As

such, this Court, effectively, is being asked to review those decisions and, that, it may not do. See id. (explaining that the Rooker-Feldman doctrine prevents federal district courts from hearing cases if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it"). Plaintiffs' remedy is an appeal within the state court system, not a federal case.

Plaintiffs make three arguments that the doctrine is not applicable, all of which are unavailing. First, they contend that the Rooker-Feldman doctrine applies only where the plaintiffs were parties to the litigation in state court and that, while Chester was a party, Malgorzata was not. Rooker-Feldman may not, however, be circumvented so easily. To the extent that the state litigation involved Malgorzata's interests, those interests were adequately represented because her spouse, Chester, was a party. To the extent the litigation did not involve her interests, she lacks standing to challenge it at this juncture.

Secondly, plaintiffs' seek to invoke Noel v. Hall, 341 F.3d 1148 (9th Cir. 2003), in which the Court of Appeals for the Ninth Circuit held that:

> [i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or

>omission by an adverse party, <u>Rooker-Feldman</u> does not bar jurisdiction.

<u>Id.</u> at 1164. Plaintiffs assert that this case fits within the latter alternative of that holding. They are, however, mistaken because they do not "assert[] as a legal wrong an allegedly illegal act or omission by <u>an adverse party</u>" (emphasis supplied).[1] Rather, they "assert[] as a legal wrong an allegedly erroneous decision by a state court". Accordingly, <u>Noel</u> merely confirms that this case must be dismissed.

Finally, plaintiffs argue that the <u>Rooker-Feldman</u> doctrine "does not apply when the federal issues were not raised in the state court proceedings". The First Circuit Court of Appeals disagrees:

> <u>Rooker-Feldman</u> does not depend on what issues were actually litigated in the state court; and it is enough that granting [the plaintiff] the injunction [they] seek[] would effectively overturn the state court's decision.

<u>Maymo-Melendez</u> v. <u>Alvarez-Ramirez</u>, 364 F.3d 27, 33 (1st Cir. 2004). In any event, plaintiffs fail to cite any "federal issue" present in this case but not litigated in state court. Having reviewed the complaint, this Court finds none. Accordingly, this case will be dismissed under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. Because it is now moot, the Court declines to address defendant's other ground for dismissal

---

[1] It appears to have escaped the plaintiff's attention that the "adverse party" referred to in <u>Noel</u> was the adverse party in the <u>state court</u> suit, not the subsequent federal suit.

(judicial immunity).

**ORDER**

In accordance with the foregoing, defendant's Motion to Dismiss (Docket No. 8) is **ALLOWED** and this case is **DISMISSED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated June 13, 2005